UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ORNELIA NIVAR, on behalf of J.D.,

    Plaintiff,

v.                                      Case No:   2:16-cv-161-FtM-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## **OPINION AND ORDER**

Plaintiff, Ornelia Nivar, on behalf of J.D., for whom she serves as legal guardian, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Child's Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The Commissioner has established a specific sequential evaluation process for determining whether a child claimant is disabled or not disabled. 20 C.F.R. § 416.924. The three-step process requires a child (or his guardian) to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of

impairments is of listing level severity, that is, the impairment(s) meets or medically equals the severity of a set of criteria for an impairment in the listings, or functionally equals the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the fact finder must determine if the child's impairment(s) meets or medically equals an impairment in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairment(s) does not meet or medically equal a listed impairment, the fact finder then must determine if the child's impairment(s) is functionally equivalent to the listings. 20 C.F.R. §§ 416.924(d), 416.926a (discussing functional equivalence). For the child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The fact finder considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d)(1).

### C. Procedural History

Plaintiff filed an application for Child's Supplemental Security Income on October 16, 2012. (Tr. 148-56). Plaintiff's application was denied initially on November 26, 2012, and upon reconsideration on April 1, 2013. (Tr. 62-69, 89-94). Plaintiff requested a hearing and, on June 2, 2014, an administrative hearing was held before Administrative Law Judge Kerry Morgan ("the ALJ"). (Tr. 25-45). On July 22, 2014, the ALJ entered a decision finding that Plaintiff was not under a disability since October 16, 2012, the date Plaintiff's application was filed. (Tr. 19-35). Plaintiff filed a request for review which the Appeals Council denied on January 5, 2016. (Tr. 1-4). Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 26, 2016.

**D. Summary of the ALJ's Decision**

The ALJ noted that J.D. was born on December 12, 2008, and was a preschooler at the time the application was filed. (Tr. 22). At step one of the sequential evaluation, the ALJ found that J.D. had not engaged in substantial gainful activity since October 16, 2012, the application date. (Tr. 22). At step two, the ALJ found that J.D. had the severe impairments of attention deficit hyperactivity disorder (ADHD) and depressive disorder. (Tr. 22).

At step three, the ALJ found that J.D. did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22). In addition, the ALJ found that J.D. did not have an impairment or combination of impairments that functionally equals the severity of the listings. (Tr. 22). The ALJ found that J.D. had no limitation in acquiring and using information, had less than marked limitation in attending and completing tasks, had less than marked limitation in interacting and relating to others, no limitation in moving about and manipulating objects, no limitation in the ability to care for himself, and no limitation in health and physical well-being. (Tr. 26-31).

The ALJ concluded that J.D. had not been under a disability since October 16, 2012, the date his application was filed. (Tr. 31).

**II. Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred by failing to discuss and weigh probative evidence. Plaintiff argues that although the ALJ addressed the evidence from one-time examiner Rafael Lopez, M.D., Ph.D., in the administrative decision, the ALJ failed to properly address the entirety of evidence. Specifically, the ALJ failed to address the Dr. Lopez's notes concerning J.D.'s problems with attention, aggression, poor motor control, and Dr. Lopez's

opinion that J.D. would need to be placed in a small, well-structured classroom with a high teacher-student ratio. (Doc. 27 p. 6). Plaintiff contends that the ALJ erred by failing to address Dr. Lopez's finding that J.D.'s GAF score was 50, which Plaintiff contends is indicative of marked limitations. (Doc. 27 p. 6-7). In addition, Plaintiff argues that the ALJ improperly addressed the treatment notes from J.D.'s therapists, Gerard Sprague, LMHC, and Kelly Vasquez, LCSW. (Doc. 27 p. 7).

Defendant argues that Plaintiff's arguments are without merit and that substantial evidence supports the ALJ's findings and conclusion that J.D. was not disabled. (Doc. 28 p. 5-10).

The record shows that on November 19, 2012, J.D. underwent a general clinical evaluation with mental status examination at the request of the Division of Disability Determination by Alesia DuPont, Psy.D., and Cheryl Kasprzak, Psy.D. (Tr. 268). In J.D.'s mental status examination, the doctors noted that J.D. was restless and switched between his seat and his mother's lap. (Tr. 268). They diagnosed J.D. with depressive disorder. (Tr. 270). While J.D. qualified for a diagnosis of attention deficit hyperactivity disorder ("ADHD"), Combined Type, the examiners were not comfortable giving this diagnosis to a child of J.D.'s age. (Tr. 270). The examiner noted that J.D. lacks anger management skills, steals, and lies, which could be a result of lack of adequate parenting. (Tr. 268).

In January, 2013, when he was four years old, J.D. began treating at the Family Preservation Services of Florida. (Tr. 273). Justine Shaul, M.Ed., conducted an initial assessment, diagnosed J.D. with disruptive behavior disorder NOS, and recommended weekly and individual and family therapy. (Tr. 273-80). Gerard Sprague, LMHC, and Kelly Vasquez, LCSW, conducted a diagnostic interview the same day, at which Plaintiff and J.D.'s brothers were present. (Tr. 281).

They diagnosed J.D. with disruptive behavior disorder NOS, and recommended weekly therapy. (Tr. 281-83).

J.D. then began treatment for disruptive behavior disorder. (Tr. 279). In the report, it is noted that J.D. has difficulty sleeping and concentrating. (Tr. 273). He also gets up three to four times per night for 45 minutes each time, and becomes angry and defiant one to two times per day that lasts for about ten minutes to an hour. (Tr. 273). It is further indicated that J.D. had rapid shifts in mood one to two times per day, engages in destructive behaviors, screams when he becomes angry, and talks to people who are not there. (Tr. 273).

J.D. was discharged from clinical services in November 2013 having purportedly achieved service goals. (Tr. 294).

On September 9, 2013, J.D. underwent a psychiatric evaluation by Dr. Lopez of the Family Preservation Services of Florida. (Tr. 296). J.D. was four years old at the time. (Tr. 295). Dr. Lopez noted that J.D. was polite and cooperative. (Tr. 296). Dr. Lopez noted that J.D.'s thought process was age-appropriate but his judgment was poor and he was impulsive and difficult to redirect. (Tr. 296). Dr. Lopez indicated that J.D. is very active, and at times displays physical aggression against his peers and his brother. (Tr. 296). Dr. Lopez indicated that J.D.'s mood is irritable and somewhat angry, and his fine motor coordination is poor for his age. (Tr. 296). Dr. Lopez diagnosed J.D. with ADHD combined type, rule out learning disorder, and assigned a GAF score of 50, suggesting he felt J.D. had serious symptoms or serious impairment in social, occupational, or school functioning. (Tr. 296). *See* American Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 32-34 (4th ed. 2000, Text Rev.) (DSM-IV-TR). Dr. Lopez recommended that J.D. continue individual therapy and parental counseling and noted that once J.D. entered school, he would be assessed for the possibility of a learning disability. (Tr. 296). Dr.

Lopez noted it was likely that J.D. would need to be placed in a small, well-structured classroom with a high teacher-student ratio. (Tr. 296). Dr. Lopez prescribed a trial of Adderall at J.D.'s caregiver's insistence, despite noting that J.D. was "much too young" for psychotropic medication at the age of four. (Tr. 297).

In April 2014, Dr. Lopez responded to a request to provide a Medical Source Statement (Child) regarding J.D.'s impairments and functional capacity by stating J.D. "does not qualify." (Tr. 312).

After reviewing the medical record and the ALJ's decision, the Court finds that the ALJ committed no reversible error. While Plaintiff is correct that the ALJ did not mention every aspect of Dr. Lopez's notes, his failure to do so does not constitute reversible error. ALJs are not required to discuss every piece of evidence and each sentence within a particular piece of evidence. *See Dyer*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). In her decision, the ALJ discussed Dr. Lopez's report, noting his diagnoses, GAF score assignment, and recommendation for continued counseling, which demonstrates the ALJ properly considered Dr. Lopez's report. (Tr. 24). In addition, Plaintiff has made no showing that Dr. Lopez's findings established that Claimant was more limited than as found by the ALJ. Despite Plaintiff's argument that the ALJ failed to consider Dr. Lopez's GAF score in combination with other evidence mentioned by Dr. Lopez, the ALJ's decision reflects that she considered all of the evidence in combination.

Likewise, the Court finds that the ALJ committed no reversible error in her treatment of the notes from Family Preservation Services of Florida. The ALJ noted that Plaintiff's guardian reported that J.D. was happy 6-7 days per week, but he would have mood swings, becoming angry and defiant, for 10 minutes to one hour. The ALJ noted that Dr. Shaul noted that J.D. was

hyperactive and could not sit still. The ALJ acknowledged that J.D. was diagnosed with and began treatment for disruptive behavior disorder. While Plaintiff is correct that the ALJ did not discuss every aspect of the records, the ALJ's discussion of the records shows that she fairly considered them in reaching her decision.

**III.	Conclusion**

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 27, 2017.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties